STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
Docket No. CV-05-181

DONALD L. GARBRECHT
LAW LIBRARY

OCT 25 2006

COLIN MARTINDALE,                    )
                Plaintiff,    )
                               )
                               )
         v.                           )
                               )
                               )
MICHAEL and PATRICIA         )
McCUE,                               )
                Defendant.   )

**DECISION AND JUDGMENT**

FILED / ENTERED
SUPERIOR COURT

OCT 18 2006

PENOBSCOT COUNTY

## FACTS

### Overview

This dispute in this matter was generated by a well-publicized auction of the Plaintiff's residence at 89 Third Street, Bangor, on June 26, 2005. The Defendants were the high bidders with a final bid of $250,000. A purchase and sale agreement was duly prepared and executed immediately following the action.

However, within a day of signing the purchase and sale agreement, the Defendants had second thoughts about the transaction and stopped payment on the $10,000 advance and advised the Plaintiff (thought counsel) that they would not be going ahead with the purchase.

The Plaintiff was able to secure a purchase and sale agreement from the second highest bidder (Mr. Downey) in the amount of his bid ($225,000).[1] The property was eventually sold to Mr. Downey on September 9, 2005. This action followed.

### The Purchaser's Repudiation

The Defendants testified that they sought to withdraw from this transaction when they learned (immediately following the signing of the purchase and sale agreement) that the property was listed on the National Historic Register and modifications to the property would require prior approval of the local historic agency. The Defendants adamantly assert that they were not advised of the historic registry status of the house prior to the sale; Plaintiff adamantly asserts that they were. Defendants argument, as the court perceives it, is that the Plaintiff (and his agents)

---

[1] This purchase and sale agreement was conditioned upon the viability of the Defendant's purchase and sale agreement. The sale to Downey was to be completed only if the Defendant's purchase was not to come to fruition.

fraudulently concealed the historical registry aspect of the house. They argue that this alleged fraud would allow them to avoid the binding terms of sale in the contract.

Each witness testified plausibly regarding their respective positions on the historic registry issue. The court finds particularly credible the Plaintiff's assertion that be believed that the historical status of the house would enhance, not diminish, its value. He would have no motivation to conceal this fact from prospective buyers. Upon this circumstance, the court finds no willful, intentional, reckless, or negligent concealment (i.e. – fraud) upon his part. Indeed, the court finds it more likely that not that the subject of the historical registry aspect of the structure was broached prior to the execution of the purchase and sale agreement.

As such, the Defendant's offer no circumstance which would justify their unilateral repudiation of the contract.[2]

## Plaintiff's Duty to Mitigate Damages

During cross examination, the Plaintiff was repeatedly asked why he gravitated so quickly to the Downey bid of $225,000 without either: 1. Submitting the house to a subsequent auction or 2. Pursuing the sale of the property on the open market through the multiple list service. Plaintiff credibly replies that he would expect little success in obtaining offers beyond the $250,000 level after he had accepted at that level in the very advantageous auction setting. Kaja Veilleux testified that real estate auctions fetch the highest price when held in conjunction with an auction of personal furnishings in the house.[3] Plaintiff's position is further buttressed by the fact that he had been unable to obtain a single offer for the house – in any amount – during the period preceding the auction when it had been listed with the multiple listing service. If the Plaintiff abandoned the Downey bid and attempted and failed at an open sale, the winter heating season would be upon him with no buyer in sight. Given the circumstances, it is difficult to suggest how the Plaintiff could have more effectively mitigated his damages.[4]

## Plaintiff's Damages

As noted above, Plaintiff's course of action allowed him to land remarkably upon his feet. He was able to secure a purchaser at a price more than ninety percent of the original contract. The sale was delayed while the parties attempted to sort out the status of the McCue contract, but not unduly so. By September 6, 2005, the sale was a "done deal." Plaintiff's counsel suggests that he may have incurred consequential damages

---

[2] Defendants make much of the fact that a reserve was established but not disclosed prior to the bidding. The court concludes that this fact provides not basis, in part or in whole, for the repudiation of the purchase and sale agreement.

[3] The auction of the residence included an auction of the extraordinary collection of Victorian furnishings which adorned the house.

[4] If the Plaintiff elected to forgo the Downey bid and attempt a sale on the open market and failed, this action would seek damages for the full amount of the lost sale – in which event Defendants might well fault Plaintiff for not pursuing the ready-made Downey offer.

during the two month down time, but Plaintiff is unable to cite those damages with anything approaching certainty. Further, it is not unusual for a period of weeks or months to pass between the execution of a purchase and sale agreement and the actual closing. Plaintiff may have had to wait until September for a closing even on the McCue contract.

## Plaintiff's Attorney's Fees

The purchase and sale agreement expressly mandates mediation and allows attorney's fees to the prevailing party where the other party refuses to engage in mediation. In this matter, the Defendants clearly refused to engage in mediation. Accordingly, the court includes, as an element of damages, the amount of $5,607.99 reflecting attorneys fees.

## JUDGMENT

The Clerk may enter Judgment on Count I of Plaintiff's Complaint in favor of Plaintiff in the amount of $25,000, and upon Count II in the amount of $5,607.99, plus interest and costs. Plaintiff may submit a computation of interest and a Bill of Costs for the court's review.

The Clerk may incorporate this Decision and Judgment upon the docket by reference.

Dated: October 18, 2006

Andrew M. Mead
JUSTICE, MAINE SUPERIOR COURT

COLIN MARTINDALE  - PLAINTIFF
89 THIRD STREET
BANGOR ME 04401
Attorney for: COLIN MARTINDALE
CHRISTOPHER LARGAY  - RETAINED 07/29/2005
LARGAY LAW OFFICES
293 STATE STREET
BANGOR ME 04401


Attorney for: COLIN MARTINDALE
JOSEPH MATTHEW PICKERING  - RETAINED 07/29/2005
LARGAY LAW OFFICES
293 STATE STREET
BANGOR ME 04401



vs
MICHAEL MCCUE  - DEFENDANT
P O BOX 75,
DIXMONT ME 04932
Attorney for: MICHAEL MCCUE
STEVEN LYMAN  - RETAINED 08/30/2005
LAW OFFICE OF STEVEN J. LYMAN
96 HARLOW STREET
BANGOR ME 04401-4920


PATRICIA MCCUE  - DEFENDANT
P O BOX 75,
DIXMONT ME 04932
Attorney for: PATRICIA MCCUE
STEVEN LYMAN  - RETAINED 08/30/2005
LAW OFFICE OF STEVEN J. LYMAN
96 HARLOW STREET
BANGOR ME 04401-4920

SUPERIOR COURT
PENOBSCOT, ss.
Docket No   BANSC-CV-2005-00181


**DOCKET RECORD**

Filing Document: COMPLAINT                    Minor Case Type: CONTRACT
Filing Date: 07/29/2005

## Docket Events:
08/01/2005 FILING DOCUMENT - COMPLAINT FILED ON 07/29/2005
            (EXHIBIT A ATTACHED)

08/01/2005 Party(s):  COLIN MARTINDALE
            ATTORNEY - RETAINED ENTERED ON 07/29/2005
            Plaintiff's Attorney: CHRISTOPHER LARGAY

08/01/2005 Party(s):  COLIN MARTINDALE
            ATTORNEY - RETAINED ENTERED ON 07/29/2005
            Plaintiff's Attorney: JOSEPH MATTHEW PICKERING

08/01/2005 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 08/01/2005
            TO PLAINTIFF'S ATTORNEY

08/15/2005 Party(s):  MICHAEL MCCUE,PATRICIA MCCUE
            SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 08/12/2005